THOMPSON, J
 

 This is a suit to recover the face value of a policy, together with attorney fee and 12
 
 *1151
 
 per cent, penalty, covering a loss by fire on the dwelling owned and occupied by Mrs. Thompson situated just outside the corporate limits of the town of Hammond.
 

 The policy was dated December 8, 1925, and was to be effective from noon of that day till noon of December 8, 1926. The policy was for $3,000 and was payable only to the insured. A fire occurred on the night of June 28, 1926, which completely destroyed the insured building and its entire contents.
 

 The plaintiff was absent from home at the time, but there is no intimation or suggestion that she was in any manner responsible for the fire.
 

 There is no dispute as to the amount of the loss and no question as to the proper proof of that loss.
 

 In January, 1926, the plaintiff obtained a loan on the property for $600 from the Florida Parishes Homestead Association, which was secured by a sale to and a repurchase of the property from the said association; the said association retaining a vendor’s privilege on the property'.
 

 In that transaction Mrs. Thompson agreed to keep the building insured as an additional security in favor of the association.
 

 Thereafter, to wit, on January 20, 1926, a policy for $2,000 on the same property was issued by the United States Underwriters’. Agency of the united States Fire Insurance Company of New York, represented by the Citizens’ Insurance Agency through Miss Ella M. Siple of Hammond, La.
 

 In this last policy it was stipulated1 that any loss that may be ascertained and proven to be due the assured should be payable to the Florida Parishes Association as its interest may appear.
 

 In the policy sued on it was stipulated that the entire policy unless otherwise provided by agreement indorsed thereon or added thereto, shall be void if the insured now has or shall hereafter make or procure any other contract of insurance, valid or not, on the property covered in whole or in part by the policy.
 

 It is by virtue of this clause of the policy, and the fact of the issuance of the second policy, that the defendant disclaims any liability.
 

 The lower court found in favor of the plaintiff and rendered judgment in her favor for the amount of the policy with 12 per cent, penalty and $400 attorney fees.
 

 There is no disputed question of law involved, and it is conceded that if Mrs. Thompson made or procured the issuance of the second policy, she is barred from recovery by the expressed terms of the contract ou which she sues..
 

 It seems that Miss Siple, who issued the second policy, was sent out to the plaintiff’s home by Mr. Mitchell, who was at the head of the Citizens’ Insurance Agency.
 

 Mitchell suggested to Miss Siple that he thought Mrs. Thompson was in need of insurance because of the fact that she was taking out a loan from the homestead on her place, and on this suggestion Miss Siple went out to the house and inspected the same for insurance.
 

 Miss Siple said she told Mrs. Thompson that she understood she needed insurance and that she (Miss Siple) would like to write it, as she understood from the homestead that she had obtained a loan on the property from the homestead. That Mrs. Thompson asked her if she wanted to inspect the prop
 
 *1153
 
 erty, to which Miss Siple replied that she would like to, and that she did inspect the house and suggested a valuation of $2,000, to which value Mrs. Thompson agreed. That she returned to her place of business, wrote out the policy for $2,000, delivered it to the homestead association, and never thereafter saw the policy. She admitted that although the fire occurred nearly six months after this second policy was issued, she never received any premium on the policy and none was ever paid either by Mrs. Thompson or the homestead association.
 

 Miss Siple testified further that she sent bills for the premium to Mrs. Thompson, to which Mrs. Thompson made no reply. This is denied by Mrs. Thompson, who says that she was never called on to pay any premium on this second policy.
 

 Mrs. Thompson testified that Miss Siple came to her house and told her that Mr. Miller of the homestead association had sent" her to look over her home. That she looked over the place, but said very few words and did not tell her that she had come to look over the property for the purpose of placing insurance on it. That if she had done so she would have told her that she already had the property insured. That she treated the lady nice, invited her into her home and showed her around. That there was no discussion whatever of the value of the property. Mrs. Thompson further testified that Mr. Miller or some one in the homestead office sent the policy out to her and that she sent it back on the very same day by a Mr. Pisciotta. She is corroborated in this by the last-named party, who testified that at the request of Mrs. Thompson he carried the policy back and delivered it to Mr. Miller or someone in the office of the association.
 

 The testimony of Mrs. Thompson and Miss Siple is the only testimony bearing directly on the issue of fact as to whether Mrs. Thompson made or procured the second policy within the meaning of the prohibition against additional insurance. And on this testimony and the record as made up we have no difficulty in reaching the conclusion that Mrs. Thompson did not procure such additional insurance. She already had a policy covering the value of her property. She did not ask for it and she did not accept it. She never paid for it, and according to her testimony she never was called on to pay for it.
 

 The most favorable consideration to be given the testimony of Miss Siple is that she was sent out to inspect the property and to make an estimate of its value on which to issue a policy by her company. She did inspect the property and did write the policy. She made the loss payable to the homestead association and delivered the policy to that association, but nowhere in her testimony does she say that Mrs. Thompson requested the policy or instructed her to make the insurance payable to the association or to deliver the policy to the association.
 

 It is true that Miss Siple was led by counsel for defendant to say that Mrs. Thompson asked that the place be insured for $2,-000 and agreed to the insurance, but Mrs. Thompson emphatically denies such statement, and all of the circumstances sustain the truthfulness of that denial and go to show that the insurance was procured by the association.
 

 We attach no significance to the fact that Mrs. Thompson permitted Miss Siple to inspect the property, nor is the fact, if it be a
 
 *1155
 
 fact, that Mrs. Thompson agreed to a value of $2,000 of any importance.
 

 Mrs. Thompson had the right to assume that Miss Siple was acting in the interest and on the behalf of the homestead association and was going to write a policy for that association covering its interest. It was perfectly natural to allow the agent to inspect the premises and to acquiesce in the valuation suggested by the agent for the purpose intended and to attain the object of Miss Siple’s visit.
 

 Nor is the fact that Mrs. Thompson did not inform Miss Siple that she already had insurance of any moment. She was not called upon to give such information unless she had been taking or procuring the additional insurance herself. On the assumption that Miss Siple was taking the policy for the homestead association, it made no difference whether there was any prior insurance or not.
 

 If as a matter of fact Mrs. Thompson was attempting to procure a second policy as claimed by Miss Siple, it was the duty of the agent ■ to ask her if she already had a policy, and if she stated that she had then common honesty and fair dealing would have required that the agent call Mrs. Thompson’s attention to the prohibited clause under which this defense is made. Miss Siple knew more about the conditions of insurance policies than did Mrs. Thompson, and we cannot assume that she would have deliberately written a policy for her own company, which she knew would destroy all prior insurance, without making any inquiry as to whether the property was already insured.
 

 We refer to this merely as a circumstance which corroborates the position of Mrs. Thompson that she did not procure, cause to be written, or accept the second policy.
 

 We note the contention of counsel for defendant that the burden is on the plaintiff to show that she did not procure or effect the additional insurance only to say that if the plaintiff carries the burden of disproving the special defense, she has sufficiently sustained that burden.
 

 The judgment appealed from is correct, and is therefore affirmed.